UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **WSOU INVESTMENTS LLC,** | § § | **CIVIL NOS.** |
| Plaintiff, | § § | W-20-CV-01163-ADA-DTG |
| | § | W-20-CV-01164-ADA-DTG |
| v. | § § | W-20-CV-01165-ADA-DTG |
| | § | W-20-CV-01166-ADA-DTG |
| **SALESFORCE.COM, INC.,** | § | W-20-CV-01167-ADA-DTG |
| | § | W-20-CV-01168-ADA-DTG |
| Defendant. | § § | W-20-CV-01169-ADA-DTG |
| | § | W-20-CV-01170-ADA-DTG |
| | § | W-20-CV-01171-ADA-DTG |
| | § § | W-20-CV-01172-ADA-DTG |

## ORDERS ON DISCOVERY DISPUTES

Before the Court are two discovery disputes that Plaintiff submitted to the Court pursuant to the procedures laid out in Section IV of the Standing Order Governing Proceedings in Patent Cases.

| Brazos's [Requesting Party] Position | Salesforce's [Responding Party] Position |
|---|---|
| **ISSUE NO. 1** | **ISSUE NO. 1** |
| **Relief Requested**: The Court should compel Ray Zado, the lawyer who – by Salesforce's own admission – negotiated the 2016 Confidential Patent License Agreement between Uniloc and Salesforce (the "Agreement"), to sit for a seven-hour deposition about the Agreement and Salesforce's license defense.<br><br>**Summary**:<br><br>On September 28, 2022, Brazos served a subpoena on Mr. Zado, an attorney with Quinn Emanuel Urquhart & Sullivan who negotiated the Agreement for Salesforce. *See* Exhibit 1, Brazos Subpoena to Ray Zado. On October 12, Mr. Zado objected to the subpoena and refused to testify. *See* Exhibit 2, Objections & Respons- | **Relief Requested**: At WSOU's insistence, Salesforce is amenable to making Mr. Zado, its outside trial counsel, available for deposition, provided that (1) WSOU agree to not seek to disqualify the law firm representing it in this action (Quinn Emanuel)[1], and that (2) WSOU not seek to preclude Mr. Zado from serving as trial counsel in this case. WSOU refused to accept these reasonable requests (or to even consider waiting until Mr. Zado's deposition is completed and the parties are sufficiently close to trial to make the determination as to whether his testimony at trial is necessary or relevant). Accordingly, Salesforce seeks the Court's guidance in resolving these issues. |

es of Ray Zado. Mr. Zado also represents Salesforce in these matters.

On December 14, Brazos received a production of documents from Prince Lobel Tye, LLP, the firm involved in the negotiation of the Agreement for Uniloc. The documents demonstrate that Mr. Zado was essential to the negotiation of the Agreement and is the most knowledgeable fact witness—Mr. Zado appeared on all of the communications produced by Prince Lobel.

Mr. Zado's role in the negotiations of the Agreement was confirmed by Salesforce's own 30(b)(6) witness, Daniel Reed. Mr. Reed testified that attorneys for Uniloc and Salesforce had conversations regarding Salesforce's position that the Agreement needed to involve "global patent peace" between Salesforce and Uniloc. (Ex. 3, Reed Tr. at 67:9-25.) However, Mr. Reed testified that he was not a participant on the calls between counsel, and that he was relying solely on statements from his counsel, Ray Zado, regarding the matters discussed on those calls. (Ex. 3 at 69:12-70:13; *see also* 68:2-12, 78:3-79:7, 85:5-24, 114:4-115:6, 120:7-122:17, 147:17-149:8.) Mr. Zado also defended Mr. Reed at this deposition.

The Court should compel Mr. Zado to testify regarding the Agreement and Salesforce's license defense for the following reasons.

First, testimony regarding Salesforce's license defense is unquestionably relevant and crucial to Brazos's preparation of its case. Salesforce has claimed numerous times that it has a "case dispositive" license defense based on the Agreement, including to the Court. Exhibit 4, 4/19/22 Hearing Transcript at 11:24-25 ("[I]t all goes directly to a defense that, if we are correct, is case dispositive.").

Second, when Brazos attempted to obtain testimony from Salesforce regarding its license defense by deposing Mr. Reed, Mr. Reed admitted

**Summary:**

"[D]epositions of opposing counsel are disfavored generally and should be permitted in only limited circumstances." *Nguyen v. Excel Corp.*, 197 F.3d 200, 209 (5th Cir. 1999). Depositions of opposing counsel are only appropriate when "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of the case." *Chandler v. Phoenix Servs.*, No. 7:19-CV-00014-O, 2020 WL 487503, at *2 (N.D. Tex. Jan. 30, 2020).

WSOU fails to acknowledge this standard or address its requirements in any level of detail. For example, WSOU alleges Mr. Zado's testimony "regarding Salesforce's license defense is . . . crucial," but fails to identify the basis on which any specific information purportedly in Mr. Zado's possession about calls with Uniloc's counsel during negotiation of the Agreement is needed to interpret it.

Any testimony by Mr. Zado would necessarily be parol evidence. Salesforce submits that the terms of the Agreement are clear and unambiguous, so no parol or other extrinsic evidence should be needed. WSOU likewise has not argued that the Agreement is ambiguous or that parol evidence should be considered.

Daniel Reed (Salesforce's in-house counsel) has already testified regarding the scope of communications between WSOU and Uniloc, and that it was his understanding at the time of the execution of the agreement that, based on those communications, Mr. Etchegoyen was personally bound by the terms of the license. *See* Exhibit A at 67:3-25, 80:11-21, 92:7-11, 116:9-24, 128:15-129:16, 139:5-11, 141:3-142:15. WSOU fails to explain how Mr. Zado's testimony about the Agreement would be noncumulative of this evidence.

2

that he was not on the phone calls with Uniloc's counsel, that there is no documentation of these calls, and that he received his information from Mr. Zado. Exhibit 3 at 121:22-122:17. The emails that Brazos has from this period underscore that the parties conducted negotiations telephonically. Exhibit 5, Reed Exhibit 10. Accordingly, it is undisputable that Mr. Zado is the most knowledgeable fact witness regarding the Agreement and Salesforce's license defense.

At the parties' March 24 meet and confer, Salesforce asked Brazos to stipulate that it will not move to disqualify Mr. Zado from serving as counsel if Salesforce produces him for a deposition (including if Mr. Zado is a witness at trial). This is an unreasonable request. First, as Brazos has maintained, it is black letter law that an attorney cannot both provide testimony and serve as counsel. *See Chandler v. Phoenix Servs.*, No. 7:19-CV-00014-O, 2020 WL 487503, at *7 (N.D. Tex. Jan. 30, 2020). If Salesforce directly or indirectly relies on the testimony of an attorney in this case, including Mr. Zado, then Brazos may have to move to disqualify that attorney. Second, it is unreasonable for Salesforce to make this request before Brazos has even heard Mr. Zado's testimony. Finally, Salesforce has had full knowledge of Mr. Zado's role in the negotiations, and, to the extent that there is a risk of disqualification, it is one that Salesforce took on knowingly.

WSOU misstates purported "black letter law" in asserting that "an attorney cannot both provide testimony and serve as counsel." The relevant standard for whether a witness may continue to serve as counsel at trial before this Court is Texas D.R.P.C. 3.08. *See* Local Rule AT-7(a).[2] Rule 3.08 provides that, even "if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an essential fact" for the client's case, disqualification is not necessary if it would "work substantial hardship on the client."

Mr. Zado's testimony is not "necessary to establish an essential fact" for Salesforce's license defense, including because the terms of the Agreement are clear and unambiguous, and his testimony is duplicative of other evidence. Unlike in *Chandler*, WSOU fails to identify (i) any contested facts or any alternate version of negotiations with Uniloc's counsel that Mr. Zado would address, or (ii) how Mr. Zado's testimony is non-cumulative of other evidence.

Disqualifying Mr. Zado would also work a "substantial hardship" on Salesforce, given that he is a senior member of Salesforce's trial counsel team that has been involved in these litigations since the filing of the Complaints.

## ISSUE NO. 2

**Relief Requested**: The Court should compel Salesforce to produce the 48 surveys listed in Exhibit 6. As explained below, the surveys listed in Exhibit 6 are a narrowly tailored group of the unproduced surveys from the Inventory tab of SFDC01395784.

**Summary**:

On October 18, 2022, Brazos deposed Salesforce's 30(b)(6) witness, Guy Jenkins. At

## ISSUE NO. 2

**Relief Requested**: The Court should deny WSOU's request to compel the production of the surveys listed in Exhibit 6 over three months after the close of fact discovery.

**Summary:**

L.R. CV-16(e) states that "[a]bsent exceptional circumstances, no motions relating to dis-

3

the deposition, it became clear that Salesforce had failed to produce critical documents responsive to Brazos's prior discovery requests that should have been produced before Mr. Jenkins's deposition, including surveys, usage data, SKU catalogs, price lists, and customer focus groups that Mr. Jenkins testified to the existence of. *See* Exhibit 7.

On November 10, 2022, Brazos met and conferred with Salesforce. As demonstrated by Brazos's email to Salesforce summarizing the meet and confer, Salesforce committed to producing the withheld documents by December 6, ahead of the December 15 deposition of Ian Varley. *See* Exhibit 8, R. Madden email dated 11/11/2022. Salesforce did not do so.

Instead, Salesforce only produced a small subset of the withheld documents ahead of Varley's deposition and then dumped documents on December 16, the last day of fact discovery. Included in that December 16 production was SFDC01395784, a document listing Salesforce surveys. *See* Exhibit 9. In reviewing SFDC01395784, it became clear that Salesforce had not produced all of the relevant surveys.

On February 10, 2023, Brazos noted that there are surveys in the "Inventory" tab of SFDC01395784 that had not been produced and requested a meet and confer on February 13 or 14. Exhibit 10, Email from M. Lawrence. After Brazos followed up, the parties met and conferred on February 24. At the meet and confer, Salesforce represented that there were over 2,000 unproduced surveys and requested that Brazos narrow the list to those most potentially relevant. *Id.* Brazos agreed to highlight which unproduced surveys and focus group materials it considered to be most potentially relevant to the accused products in these cases, and counsel for Salesforce agreed to take this narrowed down list to its client to consider producing. *Id.*

On March 7, Brazos provided the tailored list of

covery, including motions under Rules 26(c), 29, and 37, shall be filed after the expiration of the discovery deadline, unless they are filed within 14 days after the discovery deadline and pertain to conduct occurring during the final 7 days of discovery." WSOU waited nearly ***two months*** after the close of fact discovery on December 16, 2022 to even first raise the issue of unproduced surveys. *See* Ex. 10 (2/10/23 J. Sutliff email). WSOU therefore must show that there are "exceptional circumstances" justifying its belated request to compel.

WSOU failed to identify any such exceptional circumstances. Any suggestion Salesforce hid the surveys by "dump[ing]" the document listing them (SFDC01395784, *see* Exhibit 9) on the last day of fact discovery is misplaced. Salesforce produced SFDC01395784 on December 16, 2022, as part of a set of just 55 documents. Nevertheless, WSOU is unable to provide any explanation as to why it took nearly two months before it identified the surveys listed therein as purportedly relevant.

Moreover, the document is clear on its face, requiring no detailed interpretation. In the "Inventory" tab of this document. where the 36 surveys sought by WSOU are listed, there is a "Product" column specifically identifying the Salesforce products that each survey pertains to. *See* Exhibit 9. The same tab also contains columns specifying the "Topic" and "Study Title" of each survey, which allowed WSOU to readily narrow down the surveys to those pertaining to the accused features of each product. *See id.*; Exhibit 10. It was trivial for WSOU to identify any allegedly relevant surveys long before February 10, 2023.

WSOU fails to demonstrate the requested 36 surveys are relevant to any particular features or functionalities of products related to WSOU's allegations of infringement or that they bear on any issues in this case. For ex-

4

| | |
|---|---|
| 48 surveys that it believed were potentially relevant to the accused products. *Id.* Salesforce refused to produce the 48 requested surveys. *Id.*<br><br>The parties met and conferred on March 24 and agreed they were at an impasse. Brazos indicated that it would further narrow the list to remove the documents relating to the '819 Patent, given that the case involving this patent has been dismissed. However, Salesforce indicated that it would still not produce the requested documents.<br><br>Brazos has narrowed the list of over 2,000 surveys to 36. Furthermore, Brazos has explained that these surveys pertain to accused products in these cases: Einstein send time optimization ('493 Patent), Customer 360 Data Manager ('827 Patent), and Communities / Experience Cloud ('320 Patent). | ample, the surveys "Einstein Feature Jobs to be Done Research" and "Freemium: Initial Investigation for Einstein Features" on their face do not relate to the Einstein Send Time Optimization ("STO") feature that is the basis of WSOU's '493 patent infringement theory. Similarly, the survey "C360 GA Readiness: EMEA Focus" in Exhibit 6 pertains to how Customer 360 operates and is perceived in the Europe, Middle East, and Africa ("EMEA"), and is not relevant to U.S. infringement. *See* Exhibit B ¶¶ 112-16, 139-50.<br><br>WSOU's belated request risks disrupting the case schedule and ongoing expert discovery. The parties already served opening expert reports for the Trial A patents, and rebuttal expert reports are due tomorrow. Furthermore, expert discovery for the Trial A patents closes on April 20, 2023 and dispositive motions are due on May 4, 2023. Any further production based on WSOU's belated request jeopardizes this schedule. |

Upon consideration of the arguments made by the parties in the discovery chart and a review of the relevant caselaw, the Court hereby rules as follows:

As for Issue 1, the Court **DENIES** Plaintiff's request for failure to pursue the discovery through other means, and untimely as discovery has closed.

As for Issue 2, the Court **DENIES** Plaintiff's request for failure to pursue the discovery through other means, and untimely as discovery has closed..

SIGNED this 3rd day of April, 2023.

_____
DEREK T. GILLILAND
UNITED STATES MAGISTRATE JUDGE